## UNITED STATES *v.* ERIE RAILROAD COMPANY.

### APPEALS FROM THE DISTRICT COURT OF THE UNITED STATES FOR THE SOUTHERN DISTRICT OF NEW YORK.

Nos. 493, 494. Argued January 11, 12, 1915.—Decided February 23, 1915.

A ruling of the Interstate Commerce Commission which was never enforced—the custom of the carriers being uniformly the other way—cannot have the weight ordinarily accorded to the contemporaneous construction of a statute by the officers upon whom is imposed the duty of administering it.

While the Act to Regulate Commerce controls the relations of carriers subject to the act with each other, such carriers may have relations with other carriers who are not subject to the act, and permission to exchange passes with other carriers subject to the act can reasonably extend to other carriers who are not subject thereto, the same business reasons existing in both cases.

A comparison of possibilities under different constructions of a statute, which is but a comparison of excesses that are possible but not likely to be practiced, is not a fair argument.

The practice of carriers exchanging passes with other carriers has its justification in a strictly business policy, and, instead of being a burden upon their resources, is an aid.

The permission in the proviso of § 1 of the Act to Regulate Commerce, as amended by the act of June 29, 1906, for the interchange of passes by common carriers, includes the interchange of passes with carriers not subject to the provisions of the act as well as those who are subject thereto.

THE facts, which involve the provisions of the Act to Regulate Commerce regulating the giving and exchange of passes by carriers, are stated in the opinion.

*Mr. Assistant Attorney General Todd*, with whom *Mr. Thurlow M. Gordon* was on the brief, for the United States:

The construction of the disputed exception in the Anti-Pass Provisions of § 1 of the Act to Regulate Commerce

for which the government contends is the construction which has been adopted by the Interstate Commerce Commission, the administrative body charged with the enforcement of that act.

With the Commission's construction of the disputed exception before it, Congress, in reënacting in 1910 the Anti-Pass Provision, made no change whatever in the language of the exception. Annual Report, I. C. C. 1907.; Conference Rulings, I. C. C. Nos. 95-g, 196, 216; *In re Free Transportation*, 12 I. C. C. 39; *United States v. Falk*, 204 U. S. 143; *United States v. Hermanos*, 209 U. S. 337; *Valk v. United States*, 28 Ct. Cls. 241.

The construction of a statute by the administrative body charged with its enforcement is always entitled to great weight, and when, as here, Congress has reënacted the statute without altering the part construed, the administrative construction, unless plainly erroneous, must be taken as impliedly ratified by Congress, and therefore as binding upon the courts. *B. & M. R. Co. v. Hooke.*, 233 U. S. 97; *Edwards v. Darby*, 12 Wheat. 207; *Greenwald v. Weir*, 130 App. Div. N. Y. 696; *Illinois Surety Co. v. United States*, 215 Fed. Rep. 334; *Inter. Com. Comm. v. C., N. O. & T. P. R. Co.*, 64 Fed. Rep. 981; *Jacobs v. Prichard*, 223 U. S. 200; *Komada v. United States*, 215 U. S. 392; *Latimer v. United States*, 223 U. S. 501; *N. Y., N. H. & H. R. Co. v. I. C. C.*, 200 U. S. 361; *Schell's Ex'rs v. Fauche*, 138 U. S. 562; *United States v. Alabama R. R.*, 142 U. S. 615; *United States v. Baruch*, 223 U. S. 191; *United States v. Hammers*, 221 U. S. 220; *United States v. Moore*, 95 U. S. 760; *United States v. Philbrick*, 128 U. S. 52.

The Commission's construction is in accord with the sense in which the disputed words are generally. used ,in the statute.

The Commission's construction is in accord with the context of the particular provision.

The Commission's construction is in accord with the

purpose and spirit of the legislation. *Alexander* v. *Alexandria,* 5 Cranch, 1; *American Express Co.* v. *United States,* 212 U. S. 522; Annual Report, I. C. C. 1889; *Atkins* v. *The Disintegrating Co.,* 18 Wall. 272; *Brewer* v. *Blougher,* 14 Pet. 178; *Brown* v. *Duchesne,* 19 How. 183; *Charleston &c. Ry. Co.* v. *Thompson,* 234 U. S. 576; *Church of the Holy Trinity* v. *United States,* 143 U. S. 457; *Colorado Free Pass Investigation,* 26 I. C. C. 491; Congressional Record, 2097, Vol. 40; *Davies* v. *Boston,* 190 Massachusetts, 194; *Edwards* v. *Darby,* 12 Wheat. 207; *Five Per Cent Increase Case,* 31 I. C. C. 351; *In re Financial Relations of L. & N. R. R.,* 31 I. C. C. 261; *L. & N. R. Co.* v. *Mottley,* 219 U. S. 467; *Lovell-McConnell Mfg. Co.* v. *Automobile Supply Co.,* 235 U. S. 383; *McKee* v. *United States,* 164 U. S. 287; *Montana Pass Situation,* 29 I. C. C. 411; *N. Y., N. H. & H. R.* v. *I. C. C.,* 200 U. S. 361; *Nor. Pac. Ry.* v. *Adams,* 192 U. S. 440; *Party Rate Case,* 145 U. S. 263; *Pollard* v. *Bailey,* 20 Wall. 520; *Tap Line Cases,* 23 I. C. C. 277; *Townsend* v. *Boston,* 187 Massachusetts, 283; *United States* v. *Chavez,* 228 U. S. 525; *United States* v. *Freeman,* 3 How. 556.

The exception contained in § 22 can have no broader operation than the exception contained in the Anti-Pass Provision of § 1. *Alexander* v. *Alexandria,* 5 Cranch, 1; Congressional Record, 2097, Vol. 40; *Cook County National Bank* v. *United States,* 107 U. S. 445; *District of Columbia* v. *Hutton,* 143 U. S. 18; *King* v. *Cornell,* 106 U. S. 395; *Murdock* v. *Memphis,* 20 Wall. 590; *Tracey* v. *Tuffley,* 134 U. S. 206; *United States* v. *Tynen,* 11 Wall. 88.

*Mr. Joseph W. Folk* filed a brief for the Interstate Commerce Commission:

The Federal court has jurisdiction to restrain by injunction the unlawful issuance of passes. See § 3, Act to Regulate Commerce. *United States* v. *Stock Yards,* 226 U. S. 286; *Am. Express Co.* v. *United States,* 212 U. S. 522.

The issuance of free passes except to persons authorized

by law to receive them is a discrimination forbidden by law under §§ 2 and 3 of the act. *In re Grand Jury Charge,* 66 Fed. Rep. 146; *Ex parte Koehler,* 30 Fed. Rep. 867; *In re Carriage of Persons Free,* 3 I. C. C. 717; *Slater v. Nor. Pac. Ry.,* 2 I. C. C. 243; *Harvey v. Louis. & Nash. R. R.,* 3 I. C. C. 793; *Producers' Ass'n v. D., L. & W.,* 7 I. C. C. 92.

It is also a violation of § 3 of the Elkins Act.

The proviso in § 1 permitting the issuance of passes to the employés of common carriers includes only employés of common carriers subject to the act.

The first paragraph of § 1 of the act limits the provision with respect to railroad common carriers to those engaged in interstate transportation.

The proviso did not bring a new class of common carriers under discussion, but simply carved out certain exceptions. *In re Webb,* 24 How. Pr. 247, 249.

It was not the intention of Congress to divide common carriers into two classes, one subject to the act and one not subject to the act. 40 Cong. Record, p. 7922. The use of the word "interchange" in the proviso indicates so; otherwise the supervisory power of the Commission over issuance of passes would be destroyed to this extent.

There can no more be free railroad transportation than there can be free taxes. The greater the number who escape payment of transportation taxes the greater the burden on those who do pay.

One of the main purposes of the Act to Regulate Commerce was to put an end to passes and discrimination which had grown up in the practice of interstate carriers: see *Louis. & Nash. R. R. v. Mottley,* 219 U. S. 468.

The Interstate Commerce Commission has uniformly so held. *In re Exchange of Free Transportation,* 12 I. C. C. 39, 47; Conference Rulings, 95-g, 196, 216; *Carey v. Eureka Springs Ry.,* 7 I. C. C. 286, 311; *Wylie v. Nor. Pac. Ry.,* 11 I. C. C. 145, 154.

These holdings of the Commission agree with the pur-

poses of Congress expressed in the act and best serve the remedial features of the legislation, and unless there is some controlling reason to the contrary, the courts will not discredit or disparage the conclusions of the Commission.

This contemporaneous construction by those having in charge the enforcement of the act should have great weight. *New Haven Case,* 200 U. S. 361, 401; *United States* v. *Hermanos,* 209 U. S. 337, 339; *United States* v. *Philbrick,* 120 U. S. 52, 59; *Tifft* v. *Southern Ry.,* 158 Fed. Rep. 1021; *I. C. C.* v. *Cincinnati, N. O. & T. P. Ry.,* 64 Fed. Rep. 931; *Ill. Cent. R. R.* v. *I. C. C.,* 206 U. S. 441; *United States* v. *Moore,* 95 U. S. 760.

The free-pass provision should be construed in harmony with the purpose of its enactment. *N. Y., N. H. & H. Ry.* v. *Int. Com. Comm.,* 200 U. S. 361; *Lau Ow* v. *United States,* 114 U. S. 47; *Hopkins* v. *United States,* 171 U. S. 578; *United States* v. *Traffic Ass'n,* 171 U. S. 550.

Section 1 of the act specifically provides to what common carriers the act shall apply. The carriers in controversy—that is, the ocean steamship line and the English railroad—do not come within the terms of the act.

This is emphasized by the amendment inserted in the anti-pass proviso in 1910.

The provisions in § 22 allowing passes to be given to the employés of other railroads are modified by § 1, as amended in 1906. The original provision in § 22 was enacted in 1887.

Even if the provisions in § 22 were not repealed, the expression contained therein that passes may be issued to employés of other railroads includes only employés of the railroad companies subject to the act.

The Erie Railroad is a carrier subject to the act and bound by it, and the court may issue an injunction broad enough to cover any future issuance of interstate passes to the agents or employés of carriers not subject to the jurisdiction of the Commission, under the act.

The contention of the defendant would practically nullify the anti-pass section through enlarging by many millions the number of those entitled to receive these bounties at the expense of the public.

In the absence of legislative authority railways should have no more right to carry anyone free than a tax collector to remit taxes. Such privileges should be strictly construed and not enlarged by construction. The railroad pass has been one of the most corrupting influences in American public life. An awakening of public conscience brought about the amendment of 1906 to correct it.

If the defendant's contention is sustained it would practically nullify the salutary provisions of § 1 and fan into flame a wrong that has been smothered to a degree compared to what it was before the amendment of 1906.

Any change should be in the direction of further restriction rather than enlargement of this privilege.

Abuses would surely follow the overruling of the Commission's interpretation of § 1.

"Mutual back scratching" with railroad passes, unless authorized by law, is no more lawful than "mutual back scratching" with any other character of public taxes.

See also *Bitterman* v. *L. & N. R. R.*, 207 U. S. 205; *Cook County National Bank* v. *United States*, 107 U. S. 445, 451; *Cosmopolitan Shipping Co.* v. *Hamburg-American Packet Co.*, 13 I. C. C. 266; *Edwards* v. *Darby*, 12 Wheat. 210; *In the Matter of Jurisdiction over Water Carriers*, 15 I. C. C. 205; *Robertson* v. *Downing*, 127 U. S. 607; *Ryan* v. *Carter*, 93 U. S. 78; *Slater* v. *Gunn*, 170 Massachusetts, 509; *Tracey* v. *Tuffly*, 134 U. S. 206; *United States* v. *Healey*, 160 U. S. 136; *United States* v. *MacDaniel*, 7 Pet. 1; *United States* v. *State Bank*, 6 Pet. 29; *United States* v. *Tynen*, 11 Wall. 88, 92, 95.

*Mr. George F. Brownell*, with whom *Mr. M. B. Pierce* was on the brief, for appellee:

The language of the proviso in the anti-pass provision of § 1 of the Act to Regulate Commerce as amended in 1906 is unambiguous, and clearly authorizes the continuance of the long-established and well-known practice and custom, which has existed ever since long before the passage of the act, of interchanging passes between common carriers subject to the act and other common carriers for their respective officers and employés. *Alexander* v. *Worthington,* 5 Maryland, 485; *American Express Co.* v. *United States,* 212 U. S. 522; *Baggaley* v. *Pittsburgh & Lake Superior Iron Co.,* 9 Fed. Rep. 638; *C. & P. Telephone Co.* v. *Manning,* 186 U. S. 238; *Gardner* v. *Collins,* 2 Pet. 93; *Georgia Banking Co.* v. *Smith,* 128 U. S. 174; *Holy Trinity Church* v. *United States,* 143 U. S. 457; *Int. Com. Comm.* v. *Baird,* 194 U. S. 25; *In the Matter of Exchange of Free Transportation,* 12 I. C. C. 40; *Kohlsaat* v. *Murphy,* 96 U. S. 160; *Maillard* v. *Lawrence,* 16 How. 256; *Thornley* v. *United States,* 113 U. S. 310; *United States* v. *Fisher,* 109 U. S. 143; *United States* v. *Goldberg,* 168 U. S. 95; *Yerke* v. *United States,* 173 U. S. 439.

To give the construction contended for by the Government the court would have to interpolate the words "subject to the provisions of this Act" in the provisos of §§ 1 and 22 under consideration. This would be legislation and not construction, and is not permissible. *American Express Co.* v. *United States,* 212 U. S. 522; *Andrews* v. *United States,* 2 Story, 202; *Ashby* v. *State,* 139 S. W. Rep. 872; *Beley* v. *Naphtaly,* 169 U. S. 353; *Day* v. *Ogdensburg & Lake Champlain R. R.,* 107 N. Y. 129; *Denn* v. *Reid,* 10 Pet. 524; *Employers' Liability Cases,* 207 U. S. 463; *Ex parte Brown,* 114 N. W. Rep. 303; *Hillburn* v. *St. Paul &c., R. R.,* 23 Montana, 229; *Johnson* v. *Burnham,* 99 Virginia, 305; *Hohlsaat* v. *Murphy,* 96 U. S. 160; *Pipe Line Cases,* 204 Fed. Rep. 798; *S. C.,* 234 U. S. 458; *Sturges* v. *Crowninshield,* 4 Wheat. 202; *United States* v. *Chase,* 135 U. S. 255; *United States* v. *Fisher,* 2 Cranch, 358; *United States* v.

*Goldberg,* 168 U. S. 95; *United States* v. *Harris,* 177 U. S. 305.

The language of the proviso in § 22 of the Act to Regulate Commerce is unambiguous, and clearly authorizes the continuance of the well-known custom and practice. which has existed ever since long before the passage of the act, of interchanging passes between railroad companies subject to the Act to Regulate Commerce and foreign and other railroad companies not subject to that act. *Baltimore & Ohio S. W. Ry.* v. *Voight,* 176 U. S. 498; *Charleston & Western Carolina Ry.* v. *Thompson,* 234 U. S. 516; *Int. Com. Comm.* v. *B. & O. R. R.,* 43 Fed. Rep. 37; *Louis. & Nash. R. R.* v. *Mottley,* 219 U. S. 467; *N. Y., N. H. & H. R. R.* v. *Int. Com. Comm.,* 200 U. S. 361; *Northern Pacific Ry.* v. *Adams,* 192 U. S. 440.

The provisions of § 22 as construed by the Supreme Court are illustrative rather than exclusive, and under its provisions railroad companies subject to the Act to Regulate Commerce lawfully could and did interchange passes with other common carriers not subject to the act including trans-Atlantic steamship companies. *Int. Com. Comm.* v. *B. & O. R. R.,* 145 U. S. 263.

The legislative history of the anti-pass provision of the act shows no purpose to prohibit the issuing by common carriers subject to the act of passes to common carriers not subject to the act, but on the contrary, indicates an intent to permit the continuance of the practice of interchanging passes between common carriers subject to the act and other common carriers. *American Express Co.* v. *United States,* 212 U. S. 522; *American Net & T. Co.* v. *Worthington,* 141 U. S. 473; *Atlantic Coast Line* v. *Riverside Mills,* 219 U. S. 200; *County of Schuyler* v. *Thomas,* 98 U. S. 172; *Holy Trinity Church* v. *United States,* 143 U. S. 457; *Jones* v. *Guaranty &c. Co.,* 101 U. S. 626; *Tap Line Cases,* 234 U. S. 27; *United States* v. *Burr,* 159 U. S. 85.

The history of the long-continued and well-recognized custom and practice of railroad companies to issue passes, in interchange with common carriers by rail and by water other than common carriers subject to the act as shown by the established facts in these cases, sustains the construction of the statute contended for by appellee and adopted by the court below. *Chamberlain* v. *Chamberlain*, 43 N. Y. 424; *C., N. O. & T. P. R. R..*v. *Int. Com. Comm.*, 162 U. S. 184; *Int. Com. Comm.* v. *B. Z. & C. R. R.*, 77 Fed. Rep. 942; *Matter of Frontier & Western R. R.*, 156 App. Div. N. Y. 62; *Steamboat New World* v. *King*, 16 How. 469; *United States* v. *Geddes*, 131 Fed. Rep. 452; *United States* v. *Railroad Co.*, 81 Fed. Rep. 783.

The Government's contention that the construction given by the Commission to provisions of the act in *ex parte* administrative rulings, must be taken as impliedly ratified by Congress and as binding upon the courts is not supported by either reason or authority. *Int. Com. Comm.* v. *D., L. & W. R. R.*, 216 U. S. 530; *N. Y., N. H. & H. R. R.* v. *Int. Com. Comm.*, 200 U. S. 361; *Omaha & Council Bluffs St. Ry.* v. *Int. Com. Comm.*, 230 U. S. 324; *United States* v. *B. & O. S. W. R. R.*, 226 U. S. 14.

MR. JUSTICE MCKENNA delivered the opinion of the court.

These are direct appeals from decrees dismissing two bills filed by the United States to enjoin the railroad company from issuing passes to employés of common carriers not subject to the Act to Regulate Commerce.

The action of the railroad company is alleged to be in violation of §§ 2 and 3 of that act, Feb. 4, 1887, c. 104, 24 Stat. 379, and of §§ 1 and 6 as amended June 29, 1906, c. 3591, 34 Stat. 584, 586, prohibiting rebates and preferences.

The bills were filed in pursuance of § 3 of the Act to Further Regulate Commerce, Feb. 19, 1903, c. 708, 32 Stat. 847, 848, which authorizes proceedings in equity to prevent common carriers from departing from their published rates or from committing any discrimination forbidden by law, and the basic contention of the United States is that the giving of passes for free transportation constituted a departure from the carrier's published rates and a discrimination against other passengers. To this the railroad replies that the passes issued by it and which constitute the ground of suit were authorized by the so-called anti-pass provision of § 1 of the Act to Regulate Commerce. The question, therefore, is very direct and is, What does the act authorize or prohibit?

The charge in No. 493 is that the railroad company which is a common carrier subject to the act, in pursuance of a standing practice, issues passes to certain of the officers, agents and employés of various trans-Atlantic steamship lines, such lines not being carriers subject to the act, while other passengers who are transported between the same points are required to pay the published fares, and that the railroad company will continue the practice.

The railroad company admits the charges and avers that it solicits transportation over its lines of freight brought to this country by the steamship lines; that the latter in turn solicit from shippers on the line of the railroad company the transportation of their freight abroad; that large amounts of traffic moving by the steamship lines are transported by the railroad company after arrival in or before departing from the United States, as the case may be, some of it under through bills of lading; that the interchange of passes between the officers and employés of the railroad and such steamship lines to the limited extent alleged is one which as a matter of common knowledge has existed and been openly followed by the railroad

company and other carriers generally for years; that its existence was commonly known long before the passage of the Interstate Commerce Act, by the terms of which its continuance is permitted; that it rests upon the same consideration, including considerations of business policy which have always been recognized as justifying the interchange of passes and is recognized and permitted by the proviso in § 1 of the act as amended and approved June 29, 1906. The provision is as follows:

"No common carrier subject to the provisions of this act, shall, after January 1, 1907, directly or indirectly, issue or give any interstate free ticket, free pass, or free transportation for passengers, . . . provided, that this provision shall not be construed to prohibit the interchange of passes for the officers, agents, and employés of common carriers, and their families; nor to prohibit any common carrier from carrying passengers free with the object of providing relief in cases of general epidemic, pestilence, or other calamitous visitation."

The material facts in No. 494 are the same as in No. 493, with the exception that the passes there in controversy were issued by the railroad company to an employé of the Great Eastern Railway of England, and a defense of the passes is made not only under the proviso of § 1, above quoted, but under § 22 of the act as originally enacted, which reads as follows:

"Nothing in this Act shall be construed to prevent railroads from giving free carriage to their own officers and employés, or to prevent the principal officers of any railroad company or companies from exchanging passes or tickets with other railroad companies for their officers and employés."

In support of its contention the United States adduces certain rulings of the Interstate Commerce Commission and argues that Congress, having reënacted the statute, adopted the Commission's construction as the proper

one. Counsel invoke a line of cases which decide, it is contended, that a contemporaneous construction of a statute by the officers upon whom is imposed the duty of administering it is entitled to weight, and, unless clearly wrong, to determining weight. The cases are familiar, the doctrine they announce a useful one, and we are brought to the inquiry, Does it apply in the case at bar?

The first of the rulings referred to was made upon petition of Frank Parmelee & Company. That company, which is a transfer company transferring passengers and packages from the railroads to the hotels in Chicago, and the reverse, asked for a ruling as to whether under the exception contained in the proviso of § 1 it had a right to interchange passes with the railroads. The Commission decided that the Parmelee Company was not a carrier subject to the act and that, therefore, an interchange of passes between it and the railroads was not permissible. In subsequent Conference Rulings the Commission decided that the right to issue passes coexisted with the obligation to file tariffs, and when the latter did not exist the former could not be exercised. These rulings received emphasis from the fact that "ocean carriers to non-adjacent foreign countries" were said to be among the carriers not subject to the act and, under the principle announced, not entitled to receive passes.

But these rulings were never enforced and the custom of carriers was uniformly the other way. Against a mere verbal construction, therefore, permitted to languish in inactivity, we have the unopposed practice of the companies. The Commission's action, therefore, cannot have the absolute effect that the Attorney General ascribes to it; but keeping it in mind, let us proceed to a consideration of the statute.

It is not denied that the words "carriers," "common carriers," "railroads" and "railroad companies" are used in the act with and without qualification "subject to the

provisions of the act," and the number of times they are so used is compared. It will do no good to set forth the instances. The act was passed to regulate the conduct and affairs of the carriers of the country, and necessarily they are brought under its provisions and subject to them. It controls their relations, but the carriers subject to the act may have relation with other carriers, and special provisions would naturally be made to govern that relation. And certainly the reasoning is not impressive which justifies an interchange of passes between carriers subject to the act and denies it to those not so subject, the same business reasons existing in both cases.

Counsel for the United States sounds an alarm at such extension and lets imagination loose in portrayal of its consequences and sees included "tap lines and other industrial railroads, street car lines, local traction companies, omnibus transfer companies and herdic lines, hackmen, boatmen, ferrymen, truckmen, lumber flumes, bucket lines for ore, parcel deliveries, district messenger services, carriers of all descriptions, both in this country and abroad"—a formidable enumeration, it must be admitted. And there must be included, too, all their officers, all their employés and their families. There is, however, an opposing picture. It is conceded that carriers subject to the act may interchange passes, the officers and employés of each carrier receiving free transportation, and giving it to every other carrier subject to the act, making an army of the privileged with the same discrimination and the same burden on the passenger service of the railroads as in the illustration of the Government. There is no argument, therefore, in a comparison of the possibilities under one construction rather than the other. At best it is but a comparison of the excesses which may be but are not likely to be practiced. Counsel seem to think that the railroads have an eager desire to distribute passes and burden their transportation service with a crowd of

free passengers. Congress certainly had no such view and gave power to exchange passes, considering that the best safeguard against its abuse was the interest of the carriers. The cases at bar are a typical instance of its exercise. It has its justification in a strictly business policy, and instead of being a burden upon the resources of the companies it is an aid to them. With these examples before us, and in view of the other reasons which we have adduced, we see no reason to disregard the literal terms of the statute. And this view is strengthened, not weakened, by the proviso inserted on June 18, 1910, which is as follows:

"And provided further, That this provision shall not be construed to prohibit the privilege of passes or franks, or the exchange thereof with each other, for . . . employés . . . of such telegraph, telephone and cable lines, and the . . . employés . . . of other common carriers subject to the provisions of this act." (36 Stat. 539, 546, c. 309.)

In such case the statute makes a special limitation, as will be observed; in other words, restricts the privilege of exchanging telegraph and telephone franks for employés, etc., of such lines and of other common carriers subject to the act—that is, there are words of explicit limitation.

*Decree affirmed.*

MR. JUSTICE MCREYNOLDS took no part in the consideration and decision of the case.